1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MARISA CASTANEDA,

9

Plaintiff,

10

v.

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

Defendant.

13

NO.  C13-5519-RSL-JPD

REPORT AND
RECOMMENDATION

14   Plaintiff Marisa Castaneda appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's Motion for Remand, Dkt. 18, be GRANTED IN PART, and the

20   Commissioner's decision be REVERSED and REMANDED for an award of benefits.

21                    I.        FACTS AND PROCEDURAL HISTORY

22   At the time of the administrative hearing, plaintiff was a thirty-nine year old woman

23   with the equivalent of a high school education.  Administrative Record ("AR") at 42.  Her past

24   work experience includes employment as a retail cashier, pharmacy technician, nursing home

REPORT AND RECOMMENDATION - 1

CNA, and retail manager, among other jobs.  AR at 42, 60.  Plaintiff was last gainfully employed at Ace Hardware in December 2009.  AR at 42.

On January 13, 2010, plaintiff filed applications for SSI payments and DIB, alleging an onset date of October 1, 2009.  AR at 135-36, 139-43.[1]  Plaintiff asserts that she is disabled due to bipolar disorder, post-traumatic stress disorder ("PTSD"), attention deficit disorder ("ADD"), anxiety, endometriosis, asthma, levator ani syndrome, cyst on ovary, Cervical Degenerative Disorder Disease, and scoliosis.  AR at 71, 77.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 71-74, 77-80.  Plaintiff requested a hearing, which took place on November 15, 2011.  AR at 36-66.  On December 22, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 15-30.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On June 27, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

---

[1] Plaintiff meets the disability insured status requirements of Title II of the Social Security Act through December 31, 2014.  AR at 20, 143.

REPORT AND RECOMMENDATION - 2

Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Castaneda bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

REPORT AND RECOMMENDATION - 3

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

1    When the claimant's impairment neither meets nor equals one of the impairments listed

2  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

3  residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

4  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

5  to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

6  the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

7  true, then the burden shifts to the Commissioner at step five to show that the claimant can

8  perform other work that exists in significant numbers in the national economy, taking into

9  consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

10  404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

11  claimant is unable to perform other work, then the claimant is found disabled and benefits may

12  be awarded.

V.    DECISION BELOW

On December 22, 2011, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since October 1, 2009 the alleged onset date.

3.    The claimant has the following severe impairments: asthma, degenerative joint disease in the knees, obesity, mood disorder, and post traumatic stress disorder.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light level work as defined in 20 CFR 404.1567(b) and 416.967(b) with some additional limitations as follows.  The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently.  The claimant can stand and/or walk for about six hours in an eight-hour

workday and sit for about six hours in an eight-hour workday.  The claimant can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  The claimant can frequently balance, stoop, kneel, crouch and crawl.  The claimant should avoid concentrated exposure to vibration, hazards, and fumes, odors, dusts, gases, poor ventilation, etc.  The claimant has the mental capacity to adequately perform the mental activities generally required by competitive, remunerative work as follows: understand, remember and carry out simple 1 to 2 step instructions, required of jobs classified at a level of SVP 1 and 2 or unskilled work.  The claimant would have average or moderate ability to perform sustained work activities (i.e. can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence.  The claimant can make judgments on simple work related decisions and can respond appropriately to supervision, co-workers, and deal with changes all within a stable work environment not dealing with the general public as in a sales/cashier position where the general public is frequently encountered as an essential element of the work process such as telemarketing.  Incidental contact with the general public is not precluded so long as the public is not a part of the work process.

6.   The claimant is unable to perform any past relevant work.

7.   The claimant was born on XXXXX, 1972 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2009, through the date of this decision.

AR at 20-30.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1

## VI.      ISSUES ON APPEAL

2      The principal issues on appeal are:

3      1.      Did the ALJ err in evaluating plaintiff's testimony?

4      2.      Did the ALJ provide specific and legitimate reasons for rejecting the opinions of
                Clifford Tartalia, M.D. and Daniel Neims, Psy.D.?

5
6      3.      Is remand necessary for further consideration of the opinions of the state agency
                medical consultants?

7      Dkt. 14 at 1; Dkt. 18 at 2-3.

8

## VII.     DISCUSSION

9      B.      The ALJ Did Not Provide Specific and Legitimate Reasons for Rejecting the
                Opinions of Clifford Tartalia, M.D.and Daniel Neims, Psy.D.

10            *1.      Standards for Reviewing Medical Evidence*

11      As a matter of law, more weight is given to a treating physician's opinion than to that

12     of a non-treating physician because a treating physician "is employed to cure and has a greater

13     opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

14     747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

15     physician's opinion, however, is not necessarily conclusive as to either a physical condition or

16     the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

17     *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

18     physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

19     contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

20     157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

21     summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

22     making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

23     merely state his/her conclusions.  "He must set forth his own interpretations and explain why

24     they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

REPORT AND RECOMMENDATION - 7

(9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.    *Clifford Tartalia, M.D. and Daniel Neims, Psy.D.*

Dr. Tartalia evaluated plaintiff at the request of Social Security in April 2010.  He reviewed medical records from Harrison Medical Center, the Crisis Intervention Center, Kitsap Mental Health Services, and Helpline House, as well as plaintiff's function report dated February 8, 2010.  AR at 413.  Dr. Tartalia noted that plaintiff was "reasonably well focused and was able to persist and keep up with the pace of the interview.  It was apparent, however, that she had considerable internal preoccupations."  AR at 416.  During the mental status

examination, plaintiff had considerable difficulty on the mental status tasks and did not know the day of the week or month, which he noted "was due to her perplexity rather than any indication of organic cognitive impairment." AR at 417.  She performed serial 7s poorly, could not spell the word "world" backwards, which Dr. Tartalia found reflective of plaintiff's "internal preoccupations."  AR at 417.  Plaintiff displayed a depressed countenance, AR at 416, and he opined that her insight and judgment had been "clouded by her difficulties."  AR at 418.

Dr. Tartalia opined that plaintiff was only "marginally able to perform simple and repetitive tasks at present, but more detailed and complex tasks appear to be moderately to severely impaired."  AR at 418.  He found it "doubtful" that plaintiff could accept instructions from supervisors and interact with coworkers and the public at this time, and therefore found that she appears moderately to severely impaired.  AR at 418.  Similarly, he found her moderately to severely impaired in her ability to perform work activities on a consistent basis without special or additional instruction, maintain regular attendance, complete a normal workday or workweek without interruptions due to her psychiatric condition.  Finally, he considered plaintiff severely impaired with respect to her ability to deal with the usual stresses encountered in a competitive workplace.  AR at 419.

Dr. Neims evaluated plaintiff in September 2011.  AR at 537.  He found that plaintiff exhibited marked depression and anxiety.  AR at 537.  He opined that her ability to communicate and perform effectively in a work setting with public contact was severely limited, and her ability to communicate and perform effectively in a work setting with limited public contact and maintain appropriate behavior was markedly limited.  AR at 538-39.  In his narrative comments, he opined that plaintiff appears poorly tolerant of stress, and that in particular her childhood history of physical, sexual and emotional abuse have resulted in extensive internalized traumatic stress with patterns of intrusive memories and efforts to avoid

those recollections.  AR at 542.  He commented that "these issues appear very raw and unprocessed."  AR at 542.  He estimated that plaintiff was disabled from substantial gainful activity for the "foreseeable 12 months or longer."  AR at 539.

The ALJ summarized Dr. Tartalia's findings in detail, but gave "little weight" to his opinion because "Dr. Tartalia noted in his report that the claimant had many short term jobs including a waitress, housekeeper, and most recently worked as a sales person in a hardware store prior to her hospitalization.  However, the undersigned notes this work history is inconsistent with the claimant's work activity report at exhibit 5E which lists her past work as cashier, CNA, manager of a clothing store, and pharmacy assistant."  AR at 26.  The ALJ found that "this inconsistency in the claimant's reporting diminishes the claimant's credibility and undermines the reliability of this opinion.  It is noted the claimant has worked in the past with mental health problems, which suggests that she could continue to work despite these impairments."  AR at 27.

Similarly, the ALJ rejected Dr. Neims' opinion based upon a perceived inconsistency with respect to the doctor's summary of plaintiff's work history.  AR at 27.  The ALJ asserted that he gave Dr. Neims' opinion "little weight" because "Dr. Neims noted the claimant last worked in 2007 as a cashier at Ace Hardware for the duration of about two years.  This is inconsistent with the claimant's work history report at exhibit 5E and also her reported earnings which demonstrated she worked through 2009."  AR at 27 (citing AR at 147-51).

The parties agree that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Drs. Tartalia and Neims.  Specifically, the ALJ erred by rejecting Dr. Tartalia's opinion based upon his statement that plaintiff "had many short term jobs" because the record actually supports Dr. Tartalia's observation.  AR at 26-27.  Plaintiff asserts that "the ALJ rejected Dr. Tartalia's statement based on an incomplete, unsigned and undated work

history report" in Exhibit 5E.  Dkt. 14 at 15 (citing AR at 185-200).  In fact, there is another report at Exhibit 7E which lists twelve jobs, appears to have been completed by the plaintiff, and is consistent with the detailed earnings query generated from the Social Security Administration's records.  AR at 147-51, 209-15.  The Social Security Administration's detailed earnings query reflects that plaintiff has had sixteen employers from 1994-2009.  AR at 147-51.  This report further reflects that plaintiff had one three-year position at Hot Topic from 1998-2001, but the only other job she has held for longer than one year was plaintiff's last job at Ace Hardware from 2007-2009.  Based upon plaintiff's earnings and dates of employment, Dr. Tartalia did not err by observing that many of plaintiff's jobs were short-term.

The ALJ further erred by rejecting Dr. Neims' opinion because "Dr. Neims noted the claimant last worked in 2007 as a cashier at Ace Hardware for the duration of about two years."  AR at 27.  The ALJ appears to have misread Dr. Neims' report, which provides, "Last work: 2007 worked as a cashier at Ace Hardware in Bainbridge Island for duration of ~2 years.  Hx work: retail.  Longest work: 3 years in retail."  AR at 541.  Especially in light of the other records confirming plaintiff's work history, Dr. Neims' report is more reasonably interpreted as being consistent with plaintiff's work history, as plaintiff began working at Ace Hardware in 2007 and worked there about two years, ending in 2009.  AR at 147-51, 209-15.  Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of examining physicians Drs. Tartalia and Neims.

### 3.   *Vincent Gollogly, Ph.D. and Dan Donahue, Ph.D.*

The state agency medical consultants considered plaintiff to be less limited than Drs. Tartalia and Neims.  Specifically, Dr. Gollogly completed a Mental Residual Functional Capacity Assessment in May 2010, finding that plaintiff is able to "understand, remember, and

perform simple, repetitive tasks and no complex tasks," complete a normal work day and work week with occasional limitations from psychiatric symptoms, handle some public contact (but would do best in positions with limited or no public contact), and "is able to meet basic adaptive needs but may have difficulty dealing with changes in routine.  She would need to work in a slow-paced stable routine environment."  AR at 430.  Dr. Gollogly's findings were affirmed by Dr. Donahue in September 2010.  AR at 459.

The ALJ asserted that the findings of Dr. Gollogly and Dr. Donahue are "given significant weight as they are consistent with the objective medical evidence.  However, in consideration of all the evidence received at the hearing level, the undersigned finds that the claimant has the above listed [RFC]." AR at 27.

Although the ALJ found that plaintiff was limited to unskilled work with limited contact with the general public, the ALJ did not adopt Dr. Gollogly's finding that plaintiff would need "a slow paced stable routine work environment."  AR at 27.  Plaintiff contends that because the ALJ's RFC assessment differed from Dr. Gollogly's opinion, the ALJ was required to explain why the option was not adopted.  Dkt. 14 at 19 (citing SSR 96-8p).

The Commissioner concedes that "the opinion that Plaintiff would need a slow-paced stable work environment was not included by the ALJ in the residual functional capacity assessment, or properly rejected by the ALJ."  Dkt. 18 at 7.[4]  In addition, the Commissioner concedes that because "the opinion of the nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of an examining or treating physician," in this case the opinions of reviewing physicians Drs. Gollogly and Donahue "may

---

[4] Without going into any detail, the Commissioner also concedes that "the ALJ did not adequately address Plaintiff's testimony."  Dkt. 18 at 3.

REPORT AND RECOMMENDATION - 12

1    not justify rejection of the examining sources opinions[.]" *Id.* (citing *Lester v. Chater*, 81 F.3d

2    821, 829-33 (9th Cir. 1996)).

3           Accordingly, the Court finds that the ALJ also erred by failing to provide specific and

4    legitimate reasons for failing to fully adopt the opinions of state agency reviewing physicians

5    Drs. Gollogly and Donahue.  In particular, the ALJ failed to explain why he rejected the

6    physicians' finding that plaintiff was limited to "a slow paced stable routine work

7    environment."

8           C.    Remand for Award of Benefits is the Appropriate Relief

9           The Court may direct an award of benefits where "the record has been fully developed

10   and further administrative proceedings would serve no useful purpose." *McCartey v.*

11   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292).  The Court

12   may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

16   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

17   erroneously rejected evidence may be credited when all three elements are met).

18          The Commissioner argues that it is not appropriate to reverse this case and remand for

19   payment of benefits for two reasons: (1) state agency reviewing physicians Drs. Gollogly and

20   Donahue found plaintiff less limited than the examining physicians Drs. Tartalia and Neims,

21   and did not opine that she was precluded from performing gainful employment, and (2) it is not

22   clear that the limitations given to the VE are conclusive and should be credited.  Dkt. 18 at 6-7.

23   The Commissioner asserts that "the agency should have an opportunity to resolve the

24

conflicting medical opinions," because the record does not clearly indicate that plaintiff is unable to perform other work in the national economy. *Id.*

Plaintiff argues that this case should be remanded for payment of benefits based upon plaintiff's improperly rejected testimony as well as the improperly rejected opinions of Drs. Tartalia and Neims. Dkt. 14 at 20. Specifically, plaintiff contends that the fact that the reviewing psychologists found plaintiff less limited than she described, or than found by the examining doctors, does not justify remanding this case for further proceedings. Dkt. 19 at 2. Plaintiff points out that the Commissioner has not pointed to any evidence, other than the opinions of the non-examining state agency physicians, which is inconsistent with the record evidence that plaintiff is disabled. In addition, plaintiff asserts that "there is no evidence that plaintiff can perform the work described by the ALJ or any work which exists in significant numbers in the national economy, [even] given the limitations attributed to plaintiff by Dr. Gollogly. Indeed, the jobs cited by the ALJ, housekeeper, shelver and production assembler, would not appear to be 'slow-paced' jobs." Dkt. 14 at 20.

The Court agrees with plaintiff. As the Commissioner acknowledges, the opinion of a non-examining doctor may only serve as substantial evidence if that opinion is consistent with other evidence in the record. Dkt. 18 at 7 (citing *Lester*, 81 F.3d at 829-33) ("In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion."). Here, the Commissioner has not established that Drs. Gollogly and Donahue's opinions are supported by other evidence in the record, or consistent with it. In fact, the Commissioner has not cited to any evidence other than the non-examining doctors' opinions, and has not disagreed with plaintiff's arguments that the treatment notes are consistent with plaintiff's testimony and the medical opinions of Drs. Tartalia and Neims. *See*

REPORT AND RECOMMENDATION - 14

1   Dkt. 18 at 7 ("Although, in this case, these reviewing physician opinions may not justify

2   rejection of the examining source opinions, they provide contrary evidence of functional

3   capabilities.").

4       The Commissioner also provides no further support for the assertion that further

5   testimony from a vocational expert is necessary before a finding of disability can be made.  In

6   response to a hypothetical question from the ALJ, the VE testified that a person who missed

7   six to eight hours in a 40-hour workweek would not be employable at any job.  AR at 63-64.

8   Plaintiff testified that she spends most of her time in her room, such that she would miss much

9   more than six to eight hours of work per week.  AR at 52-53, 201-02.  Dr. Tartalia opined that

10  plaintiff "does not appear to be able to maintain regular attendance in a workplace," and could

11  not "complete a normal workday or workweek without interruptions due to her psychiatric

12  condition," also establishing that she would not be able to complete a 40-hour workweek.  AR

13  at 418-19.[5]

14      In addition, the VE testified that an individual who needed additional supervision or

15  instructions from their supervisors to keep them on task would be fired after no more than one

16  month.  AR at 65.  Dr. Tartalia opined that plaintiff "does not appear to be able to perform

17  work activities on a consistent basis without special or additional instructions, and for this

18  reason she appears to be moderately to severely impaired."  AR at 418.  Similarly, Dr. Neims

19  found that plaintiff had moderate limitations in her ability to perform tasks without

20  supervision.  AR at 438.  Plaintiff's testimony is also consistent with these physicians'

21  opinions, as she described her difficulty completing even simple daily activities such as

22      [5] Although Dr. Neims did not specifically address plaintiff's ability to complete a 40-
23  hour workweek, he opined that plaintiff had several marked limitations that would prevent her
    from performing effectively and maintaining appropriate behavior in a work setting, even with
24  limited public contact, such that she would be unable to work for a minimum of 12 months.
    AR at 539.

REPORT AND RECOMMENDATION - 15

personal care, cooking, laundry, and dishes, and has received notices that her apartment is a fire hazard.  AR at 51-53, 203.[6]

Accordingly, as set forth above, the ALJ erred in finding plaintiff not credible and improperly discounting evidence from her examining physicians establishing that she is disabled.  If plaintiff's testimony and the opinions of these examining physicians are credited, they would establish that plaintiff cannot work full time.  As a result, there are no outstanding issues that must be resolved before a determination of disability can be made.  Plaintiff first filed her application for benefits four years ago.  There is nothing to be gained by sending this matter back for a second hearing.

### VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's Motion for Remand, Dkt. 18, be GRANTED IN PART, and this case be REVERSED and REMANDED to the Commissioner with instructions to award benefits.  A proposed order accompanies this Report and Recommendation.

DATED this 4th day of February, 2014.

_James P. Donohue_

JAMES P. DONOHUE
United States Magistrate Judge

---

[6] Plaintiff's testimony is also consistent with treatment notes from Helpline House, which indicate that plaintiff has difficulty with her daily activities and confirm the state of her home.  AR at 397-99.

REPORT AND RECOMMENDATION - 16